909 So.2d 612 (2005)
STATE of Louisiana
v.
Kareem PRICE.
No. 04-KA-812.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 2005.
*613 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Vincent Paciera, Jr., Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Defendant, Kareem Price, appeals his conviction and sentence for armed robbery. For the following reasons, defendant's conviction is affirmed, defendant's sentence is vacated, and we further remand to the district court for re-sentencing.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Kareem Price, with armed robbery, a violation of LSA-R.S. 14:64. Price pled not guilty. Thereafter, the State amended the bill to charge Price with the use of a firearm as a dangerous weapon in the commission of an armed robbery, a violation of LSA-R.S. 14:64.3.[1] On September 11, 2003, *614 the trial judge denied Price's motion to suppress his statement.
On January 29, 2004, the matter proceeded to trial before a twelve-person jury which found Price guilty of committing armed robbery with a firearm. On February 5, 2004, the trial judge sentenced Price to forty years of imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The trial judge also denied Price's motion to reconsider sentence. Price timely filed the present appeal.
At approximately 9:00 a.m. on Sunday, March 16, 2003, a Taco Bell on Manhattan Boulevard in Jefferson Parish was robbed by a gunman wearing a blue ski mask. At trial, Taco Bell employees Brian and Brianeka Massey, Kevin Green, and Shelly Fairbanks described the morning's events. Brian Massey testified that he was cooking when someone tapped him on the shoulder. After turning around, Massey saw a man wearing a ski mask holding a gun. The man told him to lie on the floor, but subsequently told Massey to take him to the "lady with the money." Massey walked with the gunman to the office of Shelly Fairbanks, the store manager. Mean-while, Massey's sister, Brianeka, was in the cooler when she saw the robber enter through the back door. After Brian Massey and the robber passed the cooler, Brianeka slipped out of the back door, ran to a nearby business and called the police.
Shelly Fairbanks was counting money in preparation for a deposit when the masked man entered her office and demanded the money. At first, Fairbanks thought Brian Massey was playing a joke on her, but Fairbanks saw the gun when the man repeated his demand for the money. Fairbanks pointed out the money scattered over the desk, and the gunman grabbed her purse. After Fairbanks begged the gunman not to take her purse, the gunman shoved the money in a Hibernia bank bag and ordered Fairbanks toward the back door. The gunman told her to lie on the floor and pointed the gun at her. Then, the gunman left. According to Fairbanks, there was between $3,000 and $4,000 in the deposit that she was counting just before the robbery.
The police arrived at the scene and found a blue ski mask near the dumpster behind the Taco Bell. According to Kevin Green, the mask was not there that morning when he had taken out the trash. Fairbanks and Brian Massey told the police that it was the mask worn by the robber.
Neither Fairbanks, nor Brian and Brianeka Massey could identify the robber, since he was masked. Although Kevin Green initially denied any knowledge of the robbery, he later told the case officer, Detective John Carroll, that Price was the robber. Further, Green told Detective Carroll that Price had told him approximately one month earlier that he intended to rob the Taco Bell. Green denied that he had purposefully left the door open for Price, but acknowledged that the door was open because he had been going in and out of the building. To the contrary, Detective Carroll testified that Green said he deliberately left the door open. Green testified that he was initially charged with armed robbery, but pled guilty to accessory after the fact and received a two-year sentence.
Price was arrested on March 20, 2003 after Detective Carroll obtained a warrant for his arrest. At approximately 7:15 that evening, Detective Carroll advised Price of his rights. Price waived his rights and ultimately gave a statement in which he *615 admitted that he robbed Taco Bell. That statement was admitted into evidence and played for the jury at trial. Detective Carroll testified at trial that he was the only detective who interviewed Price. Further, Detective Carroll denied that anyone used force on Price. He identified a photograph of defendant taken at the end of the statement.
During the interview with Detective Carroll, Price consented to a swab of the inside of his mouth. According to Bonnie Dubourg, an expert in DNA analysis, Price's DNA from the swab was consistent with the DNA found in a cutting from the ski mask found at the Taco Bell. In fact, Ms. Dubourg testified that the probability was greater than 1 in 10 billion that the DNA belonged to someone other than defendant or an identical twin.
Price and his mother, Carolyn Williams, testified on behalf of the defense. Ms. Williams testified that defendant left to get gas in her lawnmower at 8:00 on the morning in question and returned about thirty minutes later. However, Ms. Williams did not know what time Price later left the house. Ms. Williams denied Price owned a gun and stated that the ski cap did not belong to defendant. Price denied that he committed the robbery and denied that he ever told Kevin Green he intended to rob the Taco Bell. Price also stated that he was questioned by Detective Carroll and Detective Mascara. According to Price, the officers denied his repeated requests for a lawyer. Further, Price said that Detective Mascara choked him several times when Detective Carroll was out of the room and when Detective Mascara took him to the restroom. However, defendant acknowledged that he said in his statement that he had been fairly treated and that the photograph taken after his statement reflected no injuries to his neck.
In his first assignment of error, Price contends that the trial judge should not have admitted his recorded statement into evidence because it was involuntary.
Before a confession may be admitted into evidence, the State has the burden of affirmatively showing that it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements, or promises.[2] Further, if the statement was made during custodial interrogation, the State must show that the defendant was advised of and voluntarily waived his constitutional rights, as provided by Miranda v. Arizona.[3] A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstances of each situation.[4] The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence.[5]
On September 11, 2003, several months before trial, a hearing was held on Price's motion to suppress his statement. The sole witness to testify was Detective John *616 Carroll, who testified that he advised Price of his Miranda rights prior to taking his statement at 7:15 p.m. on March 20, 2003. Detective Carroll testified he explained each of the rights on the waiver of rights form to Price. He further testified that Price initialed the form next to each right and signed the form indicating that he understood his rights and wished to waive them. Detective Carroll testified that Price never said he wanted an attorney and never said he wanted to stop the statement. Detective Carroll pointed out that the transcribed statement reflects that Price answered affirmatively when asked if he was allowed to eat, drink, and use the restroom, and when asked if he had been treated fairly.
Detective Carroll testified that the recorded statement began at 10:35 p.m. According to Detective Carroll, Price never denied that he committed the robbery prior to the recorded statement. Rather, during the three hours before the recorded statement, Price changed his story many times, and attempted to determine what information Detective Carroll had about the robbery. Detective Carroll specifically denied that he yelled at, placed his hands on, or choked Price. Further, Detective Carroll acknowledged that someone else may have stepped in the room to watch the Price if Detective Carroll had to leave, but that "it was my [Detective Carroll's] . . . interview."
Price did not testify or present any evidence at the hearing. After Detective Carroll's testimony, the trial court ruled that the statement was admissible.
The Louisiana Supreme Court has recognized the reviewing court is not limited to the evidence adduced at the suppression hearing, but may consider all pertinent evidence adduced at trial in evaluating the correctness of a trial judge's ruling on a motion to suppress a confession. However, the review is not de novo, "because the evaluation of witness credibility often plays such a large part in the context of a motion to suppress a confession, reviewing courts should defer to the finding of the trial judge unless his finding is not adequately supported by reliable evidence."[6]
In the present case, the testimony of Detective Carroll at the suppression hearing and at trial reflects that defendant voluntarily made an inculpatory statement after being advised of and waiving his Miranda rights. There was no evidence to the contrary for the trial judge to consider before denying the motion to suppress because Price did not testify or present any evidence at the suppression hearing. Further, there was no evidence of involuntariness at trial, other than Price's testimony. Also, the defendant's photograph taken at the conclusion of the statement, counters Price's allegations of force. Despite defendant's claim that he was repeatedly choked, Price agreed that the photograph did not disclose any evidence of injury. Therefore, under the totality of the circumstances, we find that the trial judge did not err in admitting defendant's statement.
Price next contends that his forty-year sentence is excessive because he was only twenty-three years old at the time of sentencing and because the sentence ignores the rehabilitative aspect of sentencing, focusing exclusively on the punitive aspect. Price further complains that the trial court did not sufficiently articulate a factual basis for the sentence as contemplated by LSA-C.Cr.P. art. 894.1.
*617 Price filed a motion to reconsider sentence, alleging that the sentence was excessive and that he was not a threat to society. The trial judge denied the motion. Price's motion to reconsider does not contain the claim that the trial court failed to comply with the provisions of Article 894.1. The failure to file a motion to reconsider sentence, or to state the specific grounds on which the motion is based, limits a defendant to a review only for constitutional excessiveness.[7] Accordingly, defendant is not entitled to a review of this claim.
Turning to defendant's argument on constitutional excessiveness, the Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is excessive if it is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, or if it imposes needless and purposeless pain and suffering.[8]
The penalty for armed robbery is imprisonment at hard labor for not less than ten years and not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.[9] Additionally, the State sought a firearm enhancement under LSA-R.S. 14:64.3(A), which provides for an additional period of five years without benefit of parole, probation, or suspension of sentence to be served consecutively to the sentence imposed under the provisions of 14:64.
In the present case, the trial judge imposed the forty-year sentence with the following reasons:
THE COURT:
Okay. Mr. Price, a jury convicted you of armed robbery with a firearm. Your case is particularly disturbing to me because, you know, while you have the right to remain silent and all the rights afforded to you in our country and state, you chose to take the stand, and in the jury's opinion, at least, you lied. Moreover, since you did have a firearm the jury found that you had a firearm, you know, you're one step away from killing somebody. Thank God that didn't happen. So, considering the evidence and the jury's conviction, the Court hereby sentences you to 40 years at hard labor without the benefit of probation, parole or suspension of sentence. . . .
When reviewing a sentence on appeal, the relevant question is not whether another sentence might have been more appropriate, but whether the trial court abused its broad sentencing discretion.[10] Armed robbery is a serious offense against the person.[11] Considering the circumstances surrounding the robbery and that this sentence is within the range approved by the Louisiana Supreme Court for similarly situated offenders, we do not find that the imposed sentence is constitutionally excessive.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920, *618 State v. Oliveaux,[12] and State v. Weiland.[13] The following matters are noted:
The commitment reflects that the trial judge properly advised Price of the prescriptive period for filing post-conviction relief, whereas the transcript reflects that the trial judge failed to completely advise defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8, in that he failed to indicate when the period began to run. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails.[14] Accordingly, we remand to the district court with an order to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record.[15]
We also note that defendant's sentence is indeterminate. The trial judge sentenced the Price to forty years of imprisonment at hard labor without benefit of probation, parole or suspension of sentence. With the firearm enhancement of LSA-R.S. 14:64.3(A), Price was subject to an additional period of incarceration as follows:
When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
Although the State listed the enhancement in the bill of information and the jury verdict sheet indicates that the jury found defendant guilty of committing armed robbery with a firearm, the trial judge did not state that he was imposing an additional period of incarceration when imposing the forty-year sentence.
After a review of the record, we find defendant's sentence is indeterminate because the trial judge did not state whether the forty-year sentence included the firearm enhancement. Because the sentence imposed by the court is indeterminate and constitutes error patent, we vacate the sentence, and remand for re-sentencing according to law for clarification of whether the defendant's sentence includes any additional punishment under La. R.S. 14:64.3.
For the foregoing reasons, the defendant's conviction is affirmed, we vacate defendant's sentence and remand to the district court for further proceedings consistent with this opinion.
AFFIRMED; SENTENCE VACATED; REMANDED.
NOTES
[1] Kevin Green was charged as a co-defendant. However, the bill was subsequently amended to charge Green with accessory after the fact.
[2] LSA-R.S. 15:451; State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, 1053, cert. denied, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997).
[3] 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), reaffirmed in Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).
[4] State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866.
[5] State v. Quest, supra, at 780.
[6] State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 281 (citations omitted).
[7] LSA-C.Cr.P. art. 881.1(E); State v. Dupre, 03-256 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
[8] State v. Lobato, 603 So.2d 739, 751 (La. 1992); State v. Brown, 01-160 (La.App. 5 Cir. 5/30/01), 788 So.2d 667, 674.
[9] LSA-R.S. 14:64(B).
[10] State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461, 462.
[11] State v. Francois, 01-807 (La.App. 5 Cir. 4/10/02), 817 So.2d 213, 216.
[12] 312 So.2d 337 (La.1975);
[13] 556 So.2d 175 (La.App. 5 Cir.1990).
[14] State v. Lynch, 441 So.2d 732, 734 (La. 1983); State v. Haynes, 96-84 (La.App. 5 Cir. 5/25/96), 676 So.2d 1120, 1123.
[15] State v. Rhodes, 04-207 (La.App. 5 Cir. 8/31/04), 881 So.2d 1263