904 So.2d 907 (2005)
STATE of Louisiana
v.
Eddie L. JACKSON, Jr.
No. 04-KA-1388.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
*909 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Vincent Paciera, Jr., Donald A. Rowan, Jr., Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
The defendant, Eddie Jackson, was charged in a Bill of Information on August 8, 2002 with two counts of armed robbery (counts eight and nine), in violation of LSA-R.S. 14:64, and one count of conspiracy to commit armed robbery (count ten), in violation of LSA-R.S. 14:26 and 14:64.[1] He pled not guilty and filed several pre-trial motions. On September 16, 2003, the defendant and co-defendant, Justin Taylor, proceeded to trial on counts eight, nine, and ten of the Bill of Information. After a three-day jury trial, the defendant was found guilty as charged on counts eight and nine, by a vote of ten to two, and on count ten by a vote of eleven to one. The defendant was sentenced to 60 years without parole, probation, or suspension of sentence on each armed robbery conviction (counts eight and nine) and forty years on the conspiracy to commit armed robbery (count ten), all of which were ordered to run concurrently with each other.
On June 7, 2002, Thomas Washington was employed as a security guard for the AmSouth Bank on Veterans Boulevard in Kenner, Louisiana. At approximately 4:30 p.m. Mr. Washington saw three black males come around the corner and go behind a wooden fence alongside the bank. He saw them don bandanas, remove them, and then leave. He later identified the defendant as being one of the three men. Co-defendant, Kenneth Rivers, testified, at trial, that he, Justin Taylor, and the defendant went to the bank on June 7, 2002 to rob it.
Three days later, on June 10, 2002, the AmSouth bank was robbed by two men. Laura Waguespack, the Assistant Manager of the bank, testified she was sitting at her desk inside the bank when she saw two *910 men, wearing bandanas and carrying guns, run towards the bank and jump the steps near the door. She yelled out that the bank was about to be robbed. The armed men then entered the bank. One walked directly to Ms. Waguespack, pointed his gun at her and told her not to move, and the other approached the teller line, pointed a gun at teller Adriene Bazile's face, and demanded money. Ms. Bazile complied by giving him money from her drawer and money a customer was depositing at the next teller window.
Meanwhile, the Branch Manager stepped into the lobby during the armed robbery and retreated to his office, where he pressed a silent alarm to call the police. Mr. Washington, the security guard, was outside the bank when he saw the perpetrators enter the bank. He called 911 on his cell phone and watched the robbery through the window.
The perpetrators took approximately $6,725.00 and then fled the bank in a white van. In an attempt to stop the perpetrators, the security guard fired his weapon at the van, but missed. The van was subsequently stopped by the Kenner police and its occupants detained. Several bank employees were brought to the location where the suspects were detained. Ms. Waguespack and Ms. Bazile explained they could only see the perpetrators' eyes during the robbery, but were able to identify one suspect at the scene as being one of the robbers based on his hairdo, which was described as sticking straight up and being similar to Don King's hairdo. Mr. Washington recognized both of the suspects, one of whom was the defendant, as the men who robbed the bank that day and who were at the bank three days earlier. Mr. Washington testified that the defendant was the one who drove the van away from the bank.
The defendant was arrested and subsequently advised of his rights. He waived his rights and gave two statements to the police. In his first statement, he denied any involvement or knowledge of the bank robbery. In his second statement, he admitted his involvement in the bank robbery.
In his first Assignment of Error, the defendant argues that the trial court erred in denying his Motion to Suppress his statement because the statement was not voluntarily made under the circumstances.
The defendant claims that his second statement was not voluntary and, therefore, should have been suppressed. He contends he was incapable of giving a voluntary statement, because he was barely 18 years old, had only a tenth grade education, and was sleep deprived at the time of his statement.
The State argues that defendant is precluded from raising this issue because he is asserting a new ground for his Motion to Suppress for the first time on appeal. The State claims that the defendant's Motion to Suppress his statement was based on the fact that the statement was made under fear, duress, and/or threats, and that defendant never argued, at the trial court level, that his young age or lack of sleep rendered his confession involuntary.
Prior to trial, the defendant filed two Motions to Suppress his statement. Both motions were based on the grounds that the statements were not free and voluntary because they were made under the influence of fear, intimidation, threats or other duress, or because of promises or other inducements; he was not advised of his rights; and his right to remain silent or his right to an attorney was not honored. On May 9, 2003, at the hearing on the Motion to Suppress, the defendant argued that force, coercion, and intimidation *911 were used to obtain his second statement and, therefore, it should be suppressed. On September 16, 2003, the trial court denied the defendant's Motion to Suppress finding that the defendant was properly Mirandized and that he voluntarily signed a written waiver of his rights.
A defendant bears the burden of asserting the basis for his Motion to Suppress in order to give the State adequate notice so that it may present evidence and address the issue. La.C.Cr.P. art. 703(E); State v. Smith, 94-120, p. 4 (La.App. 5 Cir. 5/31/94), 638 So.2d 452, 455. After the defendant files a Motion to Suppress, the State has the burden to prove the defendants confession was of a free and voluntary nature. La.C.Cr.P. art. 703(D). Therefore, the defendant is limited, on appeal, to the grounds he articulated at trial; a new basis for the claim, even if it would be meritorious, cannot be raised for the first time on appeal. State v. Smith, 638 So.2d at 455-456. See also, State v. Torregano, 03-1335, p. 3 (La.App. 5 Cir. 5/11/04), 875 So.2d 842, 845; State v. Richardson, 00-1551, p. 6 (La.App. 5 Cir. 8/28/01), 795 So.2d 477, 482 writ denied, 01-2670 (La.8/30/02), 823 So.2d 939.
While the defendant challenged the voluntariness of his confession, neither his written motion, nor the evidence presented at the motion hearing, alleged that the statement was involuntary because of his young age or because he was sleep deprived at the time of the statement. Since the defendant has raised these new bases for suppression of his statement for the first time on appeal, they are not properly before this Court.
In his second Assignment of Error the defendant argues that the trial court erred in concluding that his right of confrontation was not violated by the State's introduction of his co-defendant's inculpatory statement because his co-defendant did not testify and, therefore, was not available for cross-examination.
The defendant claims the trial court erred in allowing co-defendant, Justin Taylor's, statement to the police into evidence. He claims that because Taylor invoked his Fifth Amendment privilege and did not testify he was denied his constitutional right to confrontation. The State appears to concede that Taylor's statement was inadmissible under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which was decided after the defendant's trial, but maintains the error was harmless in light of the overwhelming evidence against defendant.
During trial, the State sought to admit co-defendant, Justin Taylor's, statement that he made to police after he was arrested. The defendant objected on the basis that co-defendant, Justin Taylor, was not planning to testify and, therefore, the defendant was being denied his right to cross-examine him. On that basis, Jackson's attorney moved for a mistrial. The State responded that the defendant waited too long to make the objection, and that Justin Taylor's inculpatory confession was admissible because both the defendant and co-defendant, Justin Taylor, admitted to the same thing, in their statements. The trial court agreed with the State and denied the mistrial. Thereafter, Justin Taylor's statement was played for the jury.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. The confrontation clause of the Louisiana Constitution expressly guarantees the accused the right "to confront and cross-examine the witnesses against him." La. Const. art. I, § 16; State v. Robinson, 01-0273 (La.5/17/02), 817 So.2d 1131, 1135. Confrontation means more *912 than the ability to confront the witnesses physically. Its main and essential purpose is to secure for the opponent the opportunity of cross-examination. Id. at 1135. Cross-examination is the primary means by which to test the believability and truthfulness of the testimony and has traditionally been used to impeach or discredit the witness. Id.; State v. Williams, 04-608, p. 6 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, 1100.[2]
In Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when his co-defendants incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant. In Bruton, the defendant was implicated in a robbery by the confession of his co-defendant, which was introduced into evidence. The co-defendant did not testify at the joint trial and the defendant had not confessed.
In Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), the Supreme Court addressed the issue of whether Bruton should apply to bar the introduction of the jointly-tried co-defendants confession where the defendants own confession, which "interlocked" with the co-defendants confession, had also been admitted as evidence against the defendant at trial. The Court had previously considered a similar issue in Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), and the plurality of the Court found Bruton inapplicable in cases involving interlocking confessions, because the introduction of the co-defendants confession was not "devastating" to a defendant whose own interlocking confession was introduced as evidence against him. However, the majority of the Court in Cruz rejected the plurality rationale espoused in Parker. The Cruz court found that the introduction of a jointly tried co-defendants confession that interlocked with the defendants confession was even more harmful to the defendant, because it corroborated the defendants own guilty confession. The Cruz court determined that a co-defendants statement remains inadmissible at a joint trial even when the defendant has given his own "interlocking" statement, and that statement is admitted, at trial, against him. See also, State v. Johnson, 96-0959 (La.6/28/96), 675 So.2d 1098; State v. Jackson, 03-883, p. 11 (La. App. 5 Cir. 4/27/04), 880 So.2d 841, 852, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118.
Importantly, the Cruz court explained that the defendant's own confession may be considered, at trial, in assessing whether his co-defendant's statements are supported by sufficient "indicia of reliability," so as to be directly admissible against the defendant, despite the lack of opportunity for cross-examination, under the requirements of Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). Cruz v. New York, 481 U.S. at 194, 107 S.Ct. at 1719; State v. Harris, 98-2113 (La.App. 1 Cir. 6/25/99), 739 So.2d 312, 315. Thus, under Cruz, a co-defendants statement is admissible at a joint trial when his statement is admissible directly against the defendant as substantive proof of the defendants guilt, if the co-defendants statement meets the "indicia of reliability" test explained in Lee.
In Lee v. Illinois, supra, the Supreme Court found that the defendants right to *913 confrontation was violated when a non-testifying co-defendants confession was admitted as substantive evidence against the defendant, despite the fact that the co-defendants confession was interlocked with the defendants confession. The Lee court held that custodial confessions of non-testifying, unavailable co-defendants are inherently suspect and presumptively unreliable against a defendant. The Court went on to state that the presumption may be rebutted, but found the co-defendants confession, in that case, did not bear sufficient independent "indicia of reliability" to rebut the presumption of unreliability. Id., 476 U.S. at 543, 106 S.Ct. at 2063. The Lee court implied that the presumption of unreliability could be rebutted by a significant showing of trustworthiness and other "indicia of reliability" as to the co-defendants confession.
Despite the Supreme Courts pronouncement in Lee and Cruz, the Louisiana Supreme Court has observed that the Supreme Court "has not yet delineated those circumstances under which a codefendants statement may be directly admissible against the defendant." State v. Johnson, 96-0959 (La.6/28/96), 675 So.2d 1098. Additionally, the U.S. Fifth Circuit Court of Appeals has noted that
The Supreme Court has never allowed the admission against a defendant of a codefendants hearsay inculpatory statements to law enforcement authorities, although it has suggested that theoretically such hearsay could be admitted in appropriate circumstances.
U.S. v. Flores, 985 F.2d 770, 782 (5th Cir.1993).
Recently, in Crawford v. Washington, supra, the United States Supreme Court again discussed the Confrontation Clause and held that in order for a statement obtained during police interrogation to be admissible against an accused in a criminal trial, it must be shown that the declarant is unavailable and there was a prior opportunity to confront the witness. See, State v. Williams, 889 So.2d at 1101. Although Crawford did not involve jointly tried defendants and the admissibility of a co-defendants confession as substantive evidence against a defendant, it appears to abrogate any "indicia of reliability" test in determining the admissibility of a co-defendant's confession as evidence against a defendant.
In Crawford, the State sought to admit the recorded statement of the defendants wife, which was made during police interrogation as substantive evidence against the defendant. The wife did not testify at trial, because of the spousal privilege. The trial court allowed the wife's statement into evidence by relying on Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, which held that the right to confrontation did not bar the admission of an unavailable witness statement against a criminal defendant, if the statement bore an adequate "indicia of reliability," either through a firmly rooted hearsay exception or other particularized guarantees of trustworthiness. The Supreme Court reversed finding the admission of the wife's statement violated the confrontation clause, because the only indicia of reliability to satisfy the constitutional right is confrontation. Crawford, 124 S.Ct. at 1358. The Supreme Court noted its decision was consistent with its prior decisions in Bruton, Lee, and Cruz. Id., 124 S.Ct. at 1368-1369.
Crawford clarified any doubt that a statement given to the police during a custodial interrogation is only admissible where the declarant is unavailable and there was a prior opportunity to confront the witness. Whether a testimonial statement bears any "indicia of reliability" is no longer the test in determining whether a *914 defendants right to confrontation has been violated.
Crawford was decided after the defendant was tried and convicted. However, this Court has held that Crawford applies to cases that were tried before the opinion was rendered. State v. Williams, supra.
Applying the Crawford test, Jackson's statements were admissible only if he was unavailable to testify and the defendant had a prior opportunity to confront Jackson. The fact that Jackson invoked his Fifth Amendment right against self-incrimination and refused to testify at trial renders him unavailable. La. C.E. art. 804; State v. Williams, 889 So.2d at 1101. Additionally, the record is devoid of any evidence that the defendant had a prior opportunity to confront Jackson. Therefore, the defendant's Sixth Amendment right to confrontation was violated by the admission of Jackson's statements.
A violation of a defendant's right to confrontation is subject to a harmless error analysis. State v. Williams, 889 So.2d at 1102. An error is harmless when the guilty verdict was surely unattributable to the error. Whether an error is harmless in a particular case depends upon many factors, including the following: 1) the importance of the witness' testimony; 2) whether the testimony was cumulative in nature; 3) whether corroborating or contradictory evidence regarding the major points of the testimony existed; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case. Id., citing State v. Robinson, 817 So.2d at 1137.
Taylor's statement was not essential to the State in its case against the defendant. The State presented the testimony of Thomas Washington, the security guard, who identified the defendant as one of the perpetrators who committed the armed robbery and one of the three people he had seen at the bank three days earlier. Additionally, Kenneth Rivers, another co-defendant, testified that he and the defendant went to the bank three days before the actual robbery with the intent of robbing it. The State also presented the testimony of a plumber, who was working a job behind the bank three days before the robbery. He testified he saw three people drive by in a car, park, exit the car, and walk towards the bank. He identified the defendant as the driver of the car, and one of the three people who exited it. The State further offered the testimony of Glenn Clark, a construction worker who was working on a nearby building, who testified he saw defendant speed by in a white minivan on the day of the robbery. The Assistant Bank Manager testified the perpetrators left the bank after the robbery in a white minivan. The defendant was arrested after being pulled from the white minivan.
The defendant's confession admitting to the armed robbery, which was played for the jury, was corroborated by evidence other than co-defendant, Justin Taylor's, statement. Justin Taylor's statement was merely cumulative of the evidence presented. Additionally, Justin Taylor's statement simply corroborated the defendant's confession. See Cruz v. New York, supra 481 U.S. at 194, 107 S.Ct. at 1719, where the Supreme Court suggested that the "interlocking" nature of the co-defendant's statement may be considered, on appeal, in assessing whether a violation of the confrontation clause was harmless.
Based on the foregoing, the violation of the defendant's right to confrontation by the erroneous admission of Justin Taylor's statement was harmless beyond a reasonable doubt.
In his third Assignment of Error, the defendant argues that his 60 year sentence *915 was excessive under the circumstances of the case.
The defendant claims his 60 year sentence for armed robbery is excessive, because he was an 18-year-old first felony offender at the time of the offense. The defendant was sentenced to 60 years on each of the two armed robbery convictions, which were ordered to run concurrently, and 40 years for his conspiracy to commit armed robbery conviction.[3] The defendant does not challenge the 40 year sentence.[4]
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261, p. 7 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. Trial judges are granted great discretion in imposing sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. State v. Allen, 03-1205, p. 3 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879.
In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Allen, supra. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Allen, supra. In reviewing a trial courts sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. Id.
A sentence for armed robbery ranges from 10 years to 99 years, without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:64. The defendant was sentenced to 60 years for each of his two armed robbery convictions, which were imposed concurrently. The defendant argues his youthful age of 19 and the fact he was a first felony offender renders his 60 year sentence excessive.
Sentences in excess of the minimum for armed robbery have been upheld despite the youth of the defendant and/or the lack of a prior criminal history. However, most of these cases involve more egregious circumstances than the present case.
In State v. Williams, 04-697, p. 9-10 (La.App. 5 Cir. 11/30/04), 889 So.2d 1135, 1144 -1145,[5] a 22-year-old defendant received a 70 year sentence for armed robbery. The defendant robbed a bank while armed with a gun. In finding, the defendant's sentence was not constitutionally excessive, this Court noted the defendant had an extensive record of violent criminal activity, which was evidenced by the presentence investigative report.
*916 In State v. Sanborn, 02-257, p. 10-12 (La.App. 5 Cir. 10/16/02), 831 So.2d 320, 330-332, writ denied, 02-3130 (La.9/26/03), 854 So.2d 346, this Court upheld the defendant's 75 year sentence for armed robbery despite his youthful age of 25 and the fact he was a first time offender. However, the defendant's crime was exceptionally brutal. The defendant shot, pistol whipped, and broke one of the victim's ankles during the commission of the crime.
In State v. Palmer, 00-0216 (La.App. 1 Cir.12/22/00), 775 So.2d 1231, writs denied, 01-0211 (La.1/11/02), 807 So.2d 224 and 01-1043 (La.1/11/02), 807 So.2d 229, the court upheld a 65 year sentence for armed robbery, although the defendant was a first felony offender. In that case, the defendant and a companion robbed a small grocery store while armed with guns. The defendant pointed his gun at a female customers face and shot a male customer. He also threatened the store clerk with the gun.
In State v. Lofton, 96-1429 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, writ denied, 97-1124 (La.10/17/97), 701 So.2d 1331, the First Circuit upheld a 50 year sentence imposed for a first felony offender convicted of armed robbery. In that case, the defendant put a gun to the victims head as a threat, and discharged the gun at least twice while the victim fled, but did not shoot the victim.
In State v. Mitchell, 26, 718 (La.App. 2 Cir. 12/7/94), 647 So.2d 423, the Second Circuit upheld a 50 year sentence for a young offender, who robbed a pizza restaurant at gunpoint, shot the manager five times, and then repeatedly stabbed her.
In State v. Smith, 433 So.2d 688 (La. 1983), the Louisiana Supreme Court affirmed a 60 year sentence for an armed robbery of a bank. The Supreme Court noted the defendant was the planner and organizing force of the robbery, in which victims were threatened and shots were fired. The court also noted the defendant had a substantial criminal past.
In the present case, the State introduced evidence at the sentencing hearing suggesting the defendant had been involved in several armed robberies for which he was not arrested. However, the trial court sentenced the defendant without consideration of this evidence, because it found the evidence was not clear and convincing. The trial court noted that the defendant engaged in a three day crime spree where, luckily, no one was killed.
In cases similar to the present one, where the defendant does not have a criminal history and the armed robbery did not involve the discharge of a weapon or any physical injury to the victims, the sentencing range is between 20-40 years.
In State v. Price, 04-812 (La.App. 5 Cir. 3/1/05), ___ So.2d ___, 2005 WL 474339, this Court found a 23-year-old defendants 40 year sentence for armed robbery not to be excessive. In Price, the defendant robbed a Taco Bell while armed with a firearm. No shots were fired, but the defendant made one of the employees lie on the floor while he pointed a gun at them.
In State v. Lewis, 39,263 (La.App. 2 Cir. 1/26/05), 892 So.2d 702, the defendant, a first felony offender, received three concurrent 20 year sentences for the armed robbery of three employees at a bank. The defendant was armed with a BB gun.
In State v. Roddy, 33,112 (La.App. 2 Cir. 4/7/00), 756 So.2d 1272, writ denied, 00-1427 (La.5/11/01), 791 So.2d 1288, a 22-year-old first felony offender defendant received a 20 year sentence for armed robbery of a bank. The defendant was a passenger in the getaway car, but was aware of the plan to rob the bank. The presentence report noted the defendant *917 had spent eight months in a juvenile detention center for a prior adjudication for armed robbery.
In State v. Square, 433 So.2d 104 (La. 1983), the Louisiana Supreme Court upheld the defendants 25 year sentence for a bank robbery. The defendant was 22 years old, was gainfully employed, lacked a prior criminal record, and there was an absence of personal injury to the victims of the robbery.
However, in this case, the defendant was charged with nine counts of armed robbery, and one count of conspiracy to commit armed robbery. He was tried on two counts of armed robbery and conspiracy to commit armed robbery, and found guilty. The sentencing range for armed robbery was 5 to 99 years, at the time the instant offenses were committed. The trial court considered the defendants age and reviewed the sentencing guidelines before imposing a 60 year sentence for each count of armed robbery. The defendants sentences of 60 years on each count of armed robbery, to be served concurrently, fall in that range.
The issue before us on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. We apply three factors in reviewing a trial courts sentencing discretion: the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes. We find in this case that the defendants sentence is not constitutionally excessive. Although, the defendant was nineteen years old and a first time offender, he went on a three-day violent crime spree. While in cases with facts similar to the present one the sentencing range is between 20-40 years, the defendant's sentence of 60 years is within the statutory sentencing range (10-99 years) and does not shock our conscience. The defendant participated in an armed robbery in which victim, Adriene Bazile, testified that she had a gun pointed at her face, which placed her in fear of her life. Bazile testified that she was terrified during the robbery and fell on the floor crying when the robbers, including the defendant, left the bank. Victim, Laura Waguespack, testified that a gun was pointed at her during the robbery, which made her nervous and she feared for herself. Given these factors, we do not find the sentence imposed to be excessive.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The trial court failed to properly inform the defendant that the prescriptive period for filing post-conviction relief is two years after his judgment of conviction and sentence has become final. La.C.Cr.P. art. 930.8. At the time of sentencing, the trial court advised the defendant, "you have ... two years to file for post conviction relief." In a subsequent order, dated April 27, 2004, the trial court advised the defendant he had "two years from the finality of sentence to seek post-conviction relief." This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisal incomplete. See, State v. George, 99-887, p. 3 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975. Although the commitment indicates a complete advisal was given, the sentencing transcript prevails when there are discrepancies. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, this case is remanded and the trial court is ordered to properly inform the defendant of the time from which prescription for post-conviction relief runs by sending written *918 notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that the defendant received the notice in the record. Id.
For the foregoing reasons, the defendant's conviction and sentence are affirmed and the case is remanded with instructions for the trial court to inform defendant of the correct prescriptive period for seeking post-conviction relief.
AFFIRMED AND REMANDED.
NOTES
[1] The Bill of Information also charged co-defendants, Justin Taylor and Kenneth Rivers, with several crimes.
[2] The Louisiana Supreme Court has not ruled on Writ No. 05-KO-81, which was filed on January 11, 2005.
[3] In his appellant brief, defendant erroneously asserts he received 60 years on all three counts.
[4] The defendant filed a written Motion for Reconsideration of sentence, which was denied by the trial court after a hearing.
[5] The Louisiana Supreme Court has not ruled on a writ filed on February 17, 2005.