980 So.2d 20 (2008)
STATE of Louisiana
v.
Jamall ARMSTEAD.
No. 07-KA-741.
Court of Appeal of Louisiana, Fifth Circuit.
February 6, 2008.
*22 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Thomas Block, Trial Counsel, Assistant District Attorneys, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
Defendant, Jamall Armstead, appeals from his conviction for armed robbery and his sentence to 50 years at hard labor, without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm.
On April 23, 2003, the Jefferson Parish District Attorney filed a bill of information charging the Defendant with armed robbery in violation of La. R.S. 14:64. Defendant was arraigned and pled not guilty. On February 14 and 15, 2006, the case was tried before a 12-person jury.
At trial, the victim, Darin Carter, testified that, on March 17, 2003, at approximately 1:25 a.m., he, his girlfriend, and his 10-year-old nephew were coming out of a bowling alley on the Westbank Expressway in Gretna, when a man approached them with a gun. The man had a white bandanna covering his face and was wearing a long-sleeved white shirt, dark jeans, and a blue baseball cap. The man pointed a gun at Carter and demanded the keys to his truck, a distinctive 1997 black F-150 truck with gray "Bradley" stripes and 23-inch chrome rims. Carter complied with the gunman's demands. The gunman also took Carter's platinum and diamond chain worth approximately $5,000.00 and fled in Carter's truck. Carter called 911, reported the incident, and gave the dispatcher a description of his truck and the gunman.
Officer Jerry Broome of the Gretna Police Department testified that he received a call at approximately 1:30 a.m. regarding the armed robbery and carjacking. At that time, Officer Broome was in the parking lot of Home Depot on the Westbank Expressway approximately a quarter of a mile from the location of the incident. As Officer Broome exited the parking lot, he observed a truck that he believed fit the description of the stolen vehicle stopped at the red light at Stumpf Boulevard and the Westbank Expressway.
Officer Broome confirmed that the truck at the light was the stolen truck. As the light turned green, Officer Broome attempted to initiate a traffic stop utilizing his lights and sirens. The truck fled. He followed the truck onto the elevated expressway toward New Orleans. Eventually, the driver of the stolen truck stopped at a baseball field in New Orleans. The driver, later identified as the Defendant, then jumped out of the truck, and fled on foot. Officer Broome observed the Defendant jump over a fence in the back of the baseball field, and sometime later, he lost sight of him.
Officer Broome indicated that he got a good look at the Defendant when he exited the truck because he had his spotlight on the Defendant and was no more than 20 feet from him. Officer Broome also indicated that there was only one person in the truck when it came to a stop. He testified that the Defendant was wearing a *23 light-colored long-sleeved shirt, either white or gray, black pants, and a green and white cap. He testified that he never lost sight of the truck during the chase, and that no one exited the truck during the chase.
Sergeant Ricky Blanchard of the New Orleans Police Department (NOPD) K9 division testified that he was called by the dispatcher to search for the Defendant with his K9 dog. He testified that a four-block perimeter was set up to prevent the Defendant from escaping. Sergeant Blanchard began his search and within the first block, his K9 dog pulled hard, which meant that he was on the Defendant's scent. He explained that 99 percent of the time the suspect will emit a scent from being scared, and that the K9 dog will pick up that odor. Sergeant Blanchard's K9 dog eventually located the Defendant under the house at 3328 Spain Street. He stated that he ordered the Defendant to come out, lay down, and "spread," and the Defendant complied. The NOPD then came to the scene and handcuffed the Defendant.
After the Defendant was apprehended, Officer Broome positively identified him as the person he saw exiting the truck after the chase. Officer Broome also positively identified the Defendant in court.
Officer Tony Wetta, a crime scene technician with the Gretna Police Department, testified that he retrieved a bandanna from the seat in the truck to be used for DNA comparison. Detective Richard Russ of the Gretna Police Department testified that he collected a DNA sample from the Defendant in order to compare it to the bandanna.
Bonnie Dubourg, a qualified expert in the field of DNA analysis, testified that she took three samples from the bandanna, and that the Defendant could not be excluded as a possible donor of all three samples. She further testified that, with respect to two of the samples, there was a "mixture" which told her that there was more than one donor's DNA present on that bandanna. She stated, however, that, with respect to the other sample, she had results from a single donor profile at "eight markers." She stated that she would expect to find one person in a group of 3.9 billion people with those "eight markers," and the Defendant could not be excluded as the donor.
After the State rested its case, the defense called Jessica Jasmine as an alibi witness. Jasmine testified that she had known the Defendant for four years. She also stated that he was playing cards and drinking with her and others at her friend's, Brandy Woodard's, house on Spain Street from 10:00 p.m. on March 16th until 3:00 a.m. on March 17, 2003. She could not remember the exact address, but recalled that it was "like 33 something  it's like a four number address." Jasmine indicated that the Defendant left at 3:00 a.m. to walk around the corner to another friend's house, and ten minutes later someone she knew came and told them that the police had apprehended the Defendant. Jasmine was cross examined on the alibi notice which had previously been filed in the record by former defense counsel. The alibi notice reflected that the Defendant was in the presence of Jessica Jasmine on the evening of March 17, 2003, at or near 3311 Mandeville Street.
Following trial, the jury found the Defendant guilty as charged. On February 22, 2006, the trial court denied the Defendant's motion for new trial. On that same date, after indicating he was ready for sentencing, the trial court sentenced the Defendant to imprisonment at hard labor for 50 years without benefit of parole, probation, or suspension of sentence.
*24 On August 17, 2006, the Defendant filed a motion for out-of-time appeal. The trial court originally denied the motion because it was filed improperly, but after correction of the error, the motion was granted. This appeal followed, in which the Defendant only assigns one error.
ASSIGNMENT OF ERROR NUMBER ONE
The Defendant argues that he received ineffective assistance of counsel because his trial counsel committed two critical errors. He argues he was prejudiced when his trial attorney failed to review and correct the record, specifically the alibi notice, before presenting Jessica Jasmine as an alibi witness. He also argues that his counsel was ineffective because he did not file a motion to reconsider sentence, nor did he object to the sentence. He contends that the 50-year sentence is excessive because it constitutes cruel and unusual punishment, it is not supported by the record, and the trial judge did not consider any mitigating factors pursuant to La.C.Cr.P. art. 894.1.
The State argues that even if counsel was ineffective in failing to review the alibi notice, the Defendant has not shown that he was prejudiced because the evidence of guilt was substantial. The State also argues that the failure to file a motion to reconsider sentence does not prejudice the Defendant because the failure to do so does not preclude review of his sentence for constitutional excessiveness. The State does not address whether the sentence is constitutionally excessive.
The Louisiana Supreme Court has held that generally a claim of ineffective assistance of counsel is most appropriately addressed through Application for Post-Conviction Relief rather than direct appeal, to afford the parties an opportunity to make an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987). However, if the appeal record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Fairley, 02-168, p. 7 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 816. In this case, the Defendant raised the issue in an assignment of error in his appeal and we find the record contains sufficient evidence to decide it.
The Sixth Amendment of the United States Constitution and Article I, Section 13 of the Louisiana Constitution safeguard a defendant's right to effective assistance of trial counsel. According to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant asserting an ineffectiveness claim must show (1) that defense counsel's performance was deficient, and (2) that the deficiency prejudiced the defendant. The defendant has the burden of showing "that there is a reasonable probability that but for counsel's unprofessional errors, the results of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct at 2068.
Ineffective assistance of counsel/alibi notice
Defendant argues that his trial counsel's performance was deficient because he failed to review and correct the record regarding the Defendant's alibi before calling Jessica Jasmine to testify as an alibi witness.
The record reflects that, on July 27, 2005, the Defendant's previous counsel, Matthew M. Goetz, filed notice of his intent to offer an alibi defense. In that notice, defense counsel provided that, "on the evening of March 17, 2003, Mr. Armstead was in the presence of Jessica Jasmine . . . at or near 3311 Mandeville St., New Orleans, LA."
*25 As was stated previously, the victim testified at trial that the incident occurred on March 17, 2003, at approximately 1:25 a.m. Sergeant Blanchard testified that the Defendant was subsequently located under the house at 3328 Spain Street. Jasmine testified that the Defendant was playing cards and drinking with her and others at her friend's house on Spain Street from 10:00 p.m. on March 16, 2003, until 3:00 a.m. on March 17, 2003.
When confronted with the discrepancy on cross examination, Jasmine testified that she was surprised to know the Defendant's former attorney had filed an alibi notice with the court stating that she and the Defendant were together on the evening of March 17th, and not March 16th. When the prosecutor informed Jasmine that the alibi notice also provided that she was with the Defendant on Mandeville Street and not Spain Street on the night of the armed robbery, Jasmine said that was incorrect. Jasmine explained that Mandeville Street was nearby, around the corner from Spain Street, and where the Defendant was staying. It is also the location to which the Defendant was walking when the police arrested him.
During the questioning, a bench conference was held after defense counsel objected to a question. The prosecutor advised the trial judge that the alibi notice mentioned a different address, and he also reminded her that defense counsel had previously adopted the alibi notice. The trial judge allowed the prosecutor to continue questioning the witness regarding the discrepancy between the alibi notice and her testimony. Following the questioning of Jasmine, the prosecutor introduced the entire record into evidence, including the alibi notice, filed by the Defendant's previous attorney.
As pointed out by the State, however, even if we assumed the Defendant's trial counsel was deficient for failing to review and correct the record before presenting Jasmine as an alibi witness, the Defendant has failed to meet his burden of showing that but for counsel's deficient performance, the outcome of the trial would have been different. The evidence of defendant's guilt was substantial and the error complained of was relatively minor.
Officer Broome observed the victim's distinctive-looking truck within a few minutes of the armed robbery and in the vicinity of the robbery. He followed it until it came to a stop and the suspect exited the truck. He stated that he never lost sight of the truck and no one exited it during the pursuit. Officer Broome also testified that he got a good look at the suspect at the time he exited the truck because he had his spotlight on the suspect and was no more than 20 feet from him. After the suspect was apprehended by the K9 unit in the vicinity where he fled the truck, Officer Broome positively identified the Defendant as the suspect he saw exiting the truck following the chase. The Defendant, when apprehended, was wearing clothing consistent with the description given by the victim of the clothing worn by the robber. Moreover, the evidence showed a high probability that the Defendant's DNA was on the bandanna worn by the suspect and found in the truck.
In contrast to the substantial evidence of guilt presented, the omission by defense counsel of checking and correcting the alibi notice was of minor importance. The date discrepancy, between the "night of the 17th " and 1:30 a.m. on the 17th, is so minor that it amounts to little more than a typographical error. And the discrepancy involving the address, was easily explained by Jasmine as being an address in the area where the Defendant was staying and walking when arrested. It was near the Spain Street location where they had *26 played cards on the evening of the robbery and she did not know the Spain Street address. Considering the overall testimony, neither discrepancy between the alibi notice and Jasmine's testimony, left uncorrected by defense counsel, had any impact on the trial. Rather, it is clear, in light of the overwhelming evidence of guilt, that the jury simply did not believe the Defendant's alibi.
Therefore, we do not find that the Defendant met his burden under Strickland of proving that there is a reasonable probability that but for this error, the results of the proceeding would have been different.
Ineffective assistance of counsel/motion to reconsider sentence/excessive sentence
Defendant contends that his 50-year sentence is excessive because it constitutes cruel and unusual punishment, it is not supported by the record, and the trial judge did not consider any mitigating factors as provided in La.C.Cr.P. art. 894.1. Thus, the Defendant argues that his counsel was ineffective because he did not object to the sentence or file a motion to reconsider sentence, depriving the Defendant of appellate review of his sentence.
Generally, the defendant's failure to make a specific objection at the time of sentencing or to file a written motion to reconsider precludes review of a sentence on appeal. State v. Fisher, 03-326, p. 16 (La.App. 5 Cir. 7/29/03), 852 So.2d 1075, 1084, writ denied, 03-2545 (La.5/14/04), 872 So.2d 510. However, this Court routinely reviews sentences for constitutional excessiveness in the absence of defendant's timely objection or the filing of a motion to reconsider the sentence. Therefore, trial counsel's failure, in this case, to object to the sentence did not prejudice the Defendant by denying him such review.
Further, the mere failure to file a motion to reconsider sentence does not in and of itself constitute ineffective assistance of counsel. State v. Fairley, 02-168, p. 7 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 816. A defendant must also "show a reasonable probability that, but for counsel's error, his sentence would have been different." Id.
Because defense counsel did not file a motion to reconsider sentence, the Defendant has lost his right to a review of his argument concerning the trial court's non-compliance with Article 894.1, which falls under the category of statutory excessiveness. State v. Fairley, 02-168 at p. 8, 822 So.2d at 816. However, the Defendant still must show a reasonable probability that his sentence would have been different but for this error. We find the Defendant has not met that burden of proof here.
La.C.Cr.P. art. 894.1(C) requires the trial judge to state for the record the considerations taken into account and the factual basis when imposing sentence. State v. Sanders, 98-855, p. 5 (La.App. 5 Cir. 5/19/99), 734 So.2d 1276, 1279, writ denied, 99-1980 (La.1/7/00), 752 So.2d 175. But, when there is an adequate factual basis for the sentence contained in the record, the trial court's failure to articulate every circumstance listed in La.C.Cr.P. art. 894.1 does not require a remand for resentencing. Id.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4.
*27 In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing the sentence. State v. Allen, 03-1205, p. 4 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879. The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed, even when the trial judge does not provide reasons for the sentence. State v. Uloho, 04-55, pp. 23-24 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 933, writ denied, 04-1640 (La.11/19/04), 888 So.2d 192. On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462;
The Defendant herein was convicted of armed robbery and sentenced to 50 years imprisonment at hard labor. It is statutorily provided that whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64 B.
At the sentencing hearing, the trial judge stated:
All right. On 03-2592, the jury found you guilty, Mr. Armstead[,] and I can tell you that I cannot disagree with them. I think they were correct in that decision.
I understand what your past history is. The State has agreed at this point in time not to multiple bill you but I know that that past is there. You have a previous conviction for burglary 
. . . .
 and possession 
. . . .
 of heroin. You are awfully young to have all of those kinds of things in your past.
I'm going to see that this doesn't happen to anybody again, at least for some time. . . .
The 50-year sentence imposed, although at the upper end, is within the 35 to 50-year range the Supreme Court has found acceptable for first offenders convicted of armed robbery. State v. Smith, 01-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4. Additionally, similar sentences have been upheld by this Court for similarly situated offenders. See State v. Price, 04-812, p. 9 (La.App. 5 Cir. 3/1/05), 909 So.2d 612, 617 (the 40-year sentence imposed on the defendant following his armed robbery conviction was not constitutionally excessive considering the circumstances surrounding the robbery); State v. White, 01-134, pp. 12-13 (La.App. 5 Cir. 7/30/01), 792 So.2d 146, 155, writ denied, 01-2439 (La.9/13/02), 824 So.2d 1190 (the 49½-year sentence for the defendant who was convicted of armed robbery was upheld; defendant had a criminal record, endangered more than one person, and the sentence was one-half the possible maximum); State v. Charles, 00-1586, p. 10 (La.App. 5 Cir. 6/27/01), 790 So.2d 705, 711 (this Court found that the 58-year sentence for the defendant who was convicted of armed robbery was not constitutionally excessive, because the sentence was mid-range, similar sentences had been upheld in other armed robbery cases, and defendant threatened the victim's life); and State v. Taylor, 04-1389, pp. 16-17 (La.App. 5 Cir. 5/31/05), 905 So.2d 451, 460-61, writ denied, 05-2203 (La.5/26/06), 930 So.2d 12 (this Court *28 found that two concurrent 60-year sentences for two armed robbery convictions were not constitutionally excessive; it noted that the sentence was within the statutory sentencing range, and that the victims had guns pointed at them during the armed robbery which placed them in fear of their lives).
Moreover, this Defendant was not a first offender. As pointed out by the trial court, he has two prior felony convictions. The Defendant put the lives of the victim, his girlfriend, and his young nephew in jeopardy when he pointed a gun at the victim and took his truck and chain. The victim testified that he felt threatened and intimidated when the Defendant pointed the gun at him, and that his nephew was so scared, he went and hid in a dumpster. The 50-year sentence was in the mid range of the sentence that could have been imposed, and the jurisprudence supports the sentence. Additionally, the State agreed not to charge the Defendant as a habitual offender, which could have resulted in a much longer sentence.
In light of the foregoing, we find an adequate factual basis in the record for the sentence imposed, the trial judge did not abuse his discretion in sentencing the Defendant, and the sentence is not excessive. Therefore, we find no merit in the Defendant's claim that his trial counsel was ineffective, because he has not shown a reasonable probability that the outcome of the trial or sentence would have been different if not for the alleged errors.
This assignment of error lacks merit.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors requiring corrective action by the Court.
Accordingly, for the reasons stated above we affirm the Defendant's conviction for armed robbery and his sentence to 50 years imprisonment, at hard labor, without benefit of parole, probation or suspension of sentence.
AFFIRMED.