956 So.2d 53 (2007)
STATE of Louisiana, Appellee
v.
Quinton C. BROWN, Appellant.
No. 41,883-KA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2007.
Charles Dean Jones, for Appellant.
*54 William Robert Coenen, District Attorney, Johnny R. Boothe, Penny Wise Douciere, Assistant District Attorneys, for Appellee.
Before BROWN, GASKINS and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the Fifth Judicial District Court, Parish of Franklin, State of Louisiana. The defendant, Quinton Brown, pled guilty to one count of second degree kidnapping and one count of carjacking. The trial court originally sentenced Brown to serve 25 years' imprisonment for the second degree kidnapping and 15 years' imprisonment for the carjacking, to be served concurrently. Later, the trial court granted Brown's motion to reconsider sentence and reduced the second degree kidnapping sentence to 20 years (still to be served concurrently with the carjacking sentence). Brown now appeals, urging that his sentence is excessive.[1] For the following reasons, we affirm the judgment of the trial court.

FACTS
Quinton Brown was charged by bill of information along with two other men for the second degree kidnapping of three persons on April 12, 2002. The state also charged Brown with armed robbery, carjacking, aggravated assault, flight from an officer and speeding (103 m.p.h. in a 55 m.p.h. zone) out of the same incident; however, the formal charging instruments for these offenses do not appear in this appellate record.
On March 4, 2003, Brown appeared before the trial court and, pursuant to a plea bargain, pled guilty to the second degree kidnapping and carjacking charges, violations of La. R.S. 14:44.1 and 14:64.2, respectively. Under the terms of the plea bargain, the state agreed to dismiss all of the other charges against Brown, including the armed robbery charge, and further agreed that Brown's sentences would be imposed concurrently. There was no other agreement as to the sentence Brown would receive. At the plea, Brown gave a sharply abbreviated description of the facts underlying the offenses, admitting that armed with a handgun he forced the victims into a car (not belonging to him) and drove them to a second location.

Original Sentencing
The matter came before the trial court for sentencing on April 22, 2003. At sentencing, the trial court reviewed the pre-sentence investigation report and the police reports, as well as gave a detailed account of the offenses. As described by the trial court, Brown and two other men, Devario Turner and David Slack, Jr., drove from Rayville to Winnsboro to find the victims. The kidnappers used subterfuge to induce Brad Foy, Janet Green, and Wendy Glasscock to go in Foy's vehicle to another location. As shown in the record, Brown claimed he was previously victimized by having special wheels, commonly known as "rims," stolen off his personal vehicle. The presence of these customized "rims" on the victim's vehicle was the obvious catalyst of this crime.
Once all the parties reached the second location, Brown drew a pistol, pointed it at one female victim's head and ordered that victim to move over so he (Brown) could enter the back seat of Foy's vehicle. Once inside the vehicle, Brown pointed his pistol at Foy's head and ordered Foy to turn off the car's engine and get out. The trial court stated that Brown then forced Foy into the trunk of Foy's own car and then drove the car to a third location while Turner held the two women in the car at *55 gunpoint. Brown was obviously totally adrenalized during the commission of this crime and the ordering of the victim into the trunk of his own vehicle. In his haste, Brown or his co-perpetrators neglected to check if the victim had anything on him. The victim, Foy, still had his cell phone on him and used it to call the sheriff's office to report the crime in progress. At that point the hunt for the vehicle and ensuing chase began.
When the car reached the third location, Brown and the other two men forced Foy out of the trunk; Turner pointed a gun at Foy and ordered Foy to surrender his money, which he did. According to the trial court, police reports show that Foy claimed that Brown urged Turner to shoot and kill the three victims, but that Turner refused. Brown and one of the other kidnappers drove away in Foy's vehicle; the third kidnapper drove away in his own vehicle. Sheriff's deputies spotted Brown driving Foy's vehicle and chased that car at speeds over 100 miles per hour. The chase concluded when Brown stopped the carhe and his accomplice ran from the scene. Brown escaped, but his accomplice was caught near the scene. Brown turned himself in to authorities the next day.
The trial court related statements from all three of the victims, who all said they were afraid that they were going to be murdered during the incident and that Brown was the one who was encouraging the others to kill the victims. The victims and the local law enforcement officers involved in the case all asked the trial court to impose either a substantial sentence or the maximum sentence. On the other hand, the trial court received 60 letters from members of the Rayville community all attesting to the good character of Brown and/or his family and asking for leniency. In addition, the trial court received a petition signed by 171 persons asking for the imposition of a lenient sentence.
The trial court noted that Brown, born in 1983 and a high-school graduate, had obtained a football scholarship to Southern University in Baton Rouge but only attended college for less than half of one semester before returning home to Rayville and committing these offenses one month later. The trial court further noted that Brown had two children by two different mothers, whom he has little or no contact with. The trial court stated that Brown had been employed as a guard at Richwood Detention Center at the time of the offense, and he had no significant prior criminal history. The trial court observed that Brown had one previous misdemeanor conviction for disturbing the peace in 2000.
The trial court found that there was an undue risk that Brown would commit another crime if his sentence was suspended or he were put on probation and that he was in need of incarceration in a custodial environment. The trial court stated that a sentence less than what it would impose would deprecate the seriousness of the offense. The trial court also found that Brown's conduct manifested deliberate cruelty to the victims because all three were made to fear for their lives despite a statement to the women that the kidnappers were only after Foy. Further, the trial court found that Brown knowingly created a risk of death or great bodily harm for the three victims and employed actual violence and a dangerous weapon in the commission of the offense. Also observed was that Brown, who was employed as a correctional officer, should have known better than to commit these crimes and that he did not act under strong provocation. The trial court finally stated that imprisonment would not cause Brown or his family excessive hardship.
*56 After reviewing these factors, Brown was sentenced to serve 25 years' imprisonment at hard labor without benefit of parole, probation or suspension of sentence for second degree kidnapping and 15 years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence for carjacking. The sentences were to be served concurrently in accordance with the plea agreement.

Motion to Reconsider Sentence
After sentencing, Brown made a verbal objection to the sentences, and subsequently filed a written motion to reconsider "the sentence imposed in this matter," urging that the sentence was excessive and that the trial court did not give adequate weight to a variety of mitigating circumstances. The motion did not refer specifically to the sentence for either crime but treated both sentences together.
After several continuances, the trial court held a hearing on the motion on August 9, 2005. A cadre of prominent people appeared as witnesses and testified on Brown's behalf. The witnesses included the pastors of two churches, the mayor of Rayville, two Rayville aldermen, and the Rayville Chief of Police. Both pastors knew Brown's family and were of the opinion that a lesser sentence would allow Brown to have a positive impact on his family and to realize his potential. The mayor, Harry Lewis, testified that he had previously been the principal of Rayville High School and had known Brown all of the defendant's life. Lewis said that he felt that Brown could become a productive citizen if the trial court would show him leniency. Alderman Terry Brown testified that he had been the former head football coach at Rayville High School and that he had watched Brown grow up through the school system. Terry Brown also said that he felt that Brown had learned his lesson and that he could become a productive citizen and a good role model for other students if the trial court were lenient with Brown. Alderman George Tennant testified that he had been the deputy sheriff to whom Brown had surrendered. He said that Brown had grown up with his daughter, Brown was very sorry for what he had done, and this was an isolated incident for Brown. Tennant said that he felt that Brown should have another chance. Rayville Police Chief Willie Robinson asked the trial court to reconsider its sentence for Brown and be more lenient. Robinson said that he had known Brown for a long time, he had talked with Brown on numerous occasions before this incident, and the trial court should consider leniency in Brown's case.
Additionally, the trial court heard from Brown himself and his mother, who had been a librarian at the Richland Parish Library for over 20 years at the time of the hearing. Brown's mother testified that she had raised her son by herself since he was four years old and that he, if released, would have both her and the community behind him to have the opportunity to become a better person and have a better life. Brown testified and said that he was sorry for what he had done and asked for the opportunity to go back to school and start his life over again.
Finally, the prosecutor spoke and opined that the trial court's original sentence was appropriate given that Brown and the others deliberately planned and carried out these serious offenses.
The trial court took the matter under advisement to review the evidence and subsequently granted the motion to reconsider sentence, filing written reasons for doing so. After extensively reviewing the facts and procedural history of the case, the trial court gave its reasons for reducing Brown's sentence on the second degree kidnapping conviction from 25 years to 20 *57 years' imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The carjacking sentence remained the same. Later, the trial court formally resentenced Brown in accordance with its earlier reasons for judgment. Brown's appeal ensued.[2]

DISCUSSION
On appeal, Brown raises only one assignment of error, arguing that the sentence imposed is excessive. Specifically, Brown urges that the trial court failed to consider the Louisiana Sentencing Guidelines. However, Brown's appeal counsel fails to note that the Louisiana Sentencing Guidelines were repealed by Acts 1995, No. 942, § 3, effective August 15, 1995, and La. C. Cr. P. art. 894.1 was amended and reenacted by Act 942 to provide the sentencing guidelines now in effect. State v. Martin, 40,150 (La.App. 2d Cir.09/21/05), 911 So.2d 917.[3] The remainder of Brown's argument is that his sentence is constitutionally excessive.
In the instant case, Brown's plea bargain did not include any sentencing agreement except that the sentences were to be imposed concurrently. Second degree kidnapping, La. R.S. 14:41.1, carries the following penalty range:
C. Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.
Carjacking, La. R.S. 14:64.2, carries the following penalty range:
B. Whoever commits the crime of carjacking shall be imprisoned at hard labor for not less than two years and for not more than twenty years, without benefit of parole, probation, or suspension of sentence.
Considering that it was agreed that Brown's sentences would be served concurrently, he faced a maximum sentence of 40 years' imprisonment at hard labor without benefit of parolethe maximum sentencing exposure for the second degree kidnapping conviction. After the trial court partially granted Brown's motion to reconsider sentence, the 20-year term of imprisonment for second degree kidnapping was precisely in the middle of the sentencing range. The trial court was required by law to impose the entire carjacking sentence without benefit of parole and elected to impose that disability for the entirety of the second degree kidnapping sentence.
Our state constitution prohibits excessive punishment. La. Const. art. I, § 20 (1974). The test imposed by the reviewing *58 court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Gann, 40,058 (La.App. 2d Cir.09/21/05), 911 So.2d 384. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir.01/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.03/11/05), 896 So.2d 57, 2004-2380 (La.06/03/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728.
A trial court has broad discretion to sentence within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Shirley, 41,608 (La. App. 2d Cir.12/13/06), 945 So.2d 267. Absent a showing of manifest abuse of that discretion we may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.05/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App. 2d Cir.05/12/04), 873 So.2d 939; State v. Lingefelt, 38,038 (La.App. 2d Cir.01/28/04), 865 So.2d 280, writ denied, XXXX-XXXX (La.09/24/04), 882 So.2d 1165. The relevant question in reviewing a sentence is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Humphrey, 445 So.2d 1155 (La.1984).
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.01/15/02), 805 So.2d 166; State v. Bradford, 29,519 (La.App. 2d Cir.04/02/97), 691 So.2d 864.
At the time he committed this offense, Brown was a 19-year-old father of two without a significant criminal history. He had briefly been enrolled at Southern University on a football scholarship, which he abandoned to return to Rayville to work as a correctional officer in a detention facility. Although Brown had no prior felony offenses, during the course of the instant offenses he used a gun and threatened the lives of three people, one of whom was forced into the trunk of his car while Brown drove to a remote location. The evidence indicates that it was Brown who urged his co-perpetrator to kill the victims after robbing themfortunately, his cohort *59 did not heed his urging and spared their lives. The kidnapping terrified the victims, and the only justification offered by Brown for the offenses was that someone allegedly had stolen the wheels from Brown's vehicle. After completing the kidnapping and carjacking, Brown then led sheriff's deputies on a very high speed chase over public roads. The entire episode from beginning to end posed an incredibly serious risk of harm to the victims and to the innocent and unknowing public at large.
The record reflects that the trial court carefully considered all of the relevant factors in La. C. Cr. P. art. 894.1, and the trial court's reasons for imposing both the original sentences and the new sentence for kidnapping are unusually thorough and well-articulated. Brown received more than a significant benefit from his plea bargain with the dismissal of the armed robbery charge, and that circumstance often justifies a sentence at the upper end of the range for the offenses of conviction.
The evidence submitted by Brown in favor of leniency as well as his youth and lack of significant criminal history clearly played a significant role in the trial court's ultimate sentencing decision. However, we conclude that when considering the totality of the circumstances and evidence of this case, the imposed sentence is neither shocking nor the needless imposition of pain and suffering. Indeed, the trial court was extremely generous in both its original and reconsidered sentence.
As did the trial court, we find this case a troubling one. Notably, we agree with the conclusions drawn by the trial court, not only as they relate to Brown's ultimate sentence, but also as to the circumstances surrounding his crimes and the resultant sentences. To quote the reasoning of the trial court:
Life presents us with many choices. The decisions we make with the choices we have are often guided by our upbringing, peer pressure and the needs of the moment. The consequences of those choices can either positively or negatively impact our lives and the lives of others.
* * *
No one wants to see a young man like Brown languish in a prison cell for many years. Yet his decision to violate the laws of our state has placed him where he is today. While this court agrees with defense counsel that the situation could have been much worse had Brown . . . pulled the pistol trigger on one or more of the three victims, the fact remains the violence of this nature, which foreseeably endangered human life, cannot be overlooked.
The mistakes we make can elevate us to learn and improve or they can cause us to descend further into the darkness of evil deeds. Hopefully Brown and his friends will use their incarceration as a learning experience and a stepping stone for a better life when they rejoin society. It is the hope of this court that Brown will make the most of this opportunity.
Whereas it might be difficult for Brown to consider his twenty-year incarceration as an "opportunity" as characterized by the trial court, we note that Brown chose to throw away his very real opportunity at a college education and athletic experience. No one forced him to commit a violent crime that terrorized three individualshe exercised his free choice. Moreover, considering the violent nature of Brown's crime, it was understandably impossible for the trial court to show Brown more leniency than it did, despite the fact that so many respectable citizens came forward to speak on his behalf and his potential *60 future playing college football. Neither is this court swayed. In fact, we believe that Brown received all the leniency that he deserved. Therefore, in light of the applicable statutory law, jurisprudence, facts of this case and potential sentence that Brown faced, we find nothing constitutionally excessive about the sentence given. Brown's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] On appeal, Brown does not make reference to his carjacking sentence.
[2] On February 10, 2006, Brown filed a timely appeal pursuant to La. C. Cr. P. art. 914(B), and the trial court granted the motion. Subsequently, the state filed in the trial court a motion to dismiss Brown's appeal on the basis that he failed to pay the costs for preparing the record. The minutes of the trial court reflect that the motion was taken up in the trial court, which granted the motion on June 1, 2006. However, the trial court did not have authority to consider the state's motion. Pursuant to La. C. Cr. P. art. 916, the trial court's jurisdiction over this matter had been divested by the previously granted order of appeal. The dismissal by the trial court of a previously taken appeal is not included among the actions authorized by the trial court after the jurisdiction of the appellate court attaches. Id.; State v. Arbuthnot, 367 So.2d 296 (La.1979). Brown later filed a motion for out of time appeal, and the trial court reinstated his appeal, bringing this matter before us presently. Regardless, the appeal is properly before us.
[3] Notably, all of the case law cited on appeal on this issue predates the repeal of the Louisiana Sentencing Guidelines and the amendment of La. C. Cr. P. art. 894.1.