JUDE G. GRAVOIS, Judge.
1 ^Defendant, Brett S. Casimer, appeals his sentences for forcible rape and second degree kidnaping, violations of La. R.S. 14:42.1 and 14:44.1, respectively. On appeal, he argues the following assignments of error:
1. The trial court erred in imposing an excessive sentence.
2. The trial court erred by failing to comply with the sentencing mandates of La.C.Cr.P. art. 894.1.
3. Defendant-appellant was denied the effective assistance of counsel as a result of his counsel’s failure to file a motion to reconsider sentence to preserve for appellate review his right to object, on specific grounds, to the excessiveness of his sentence.
For the reasons that follow, we find no merit to defendant’s assignments of error and affirm his sentences.

*1132
PROCEDURAL HISTORY

On September 29, 2011, the Jefferson Parish Grand Jury returned an indictment charging defendant, Brett S. Casimer, a deputy with the Jefferson Parish Sheriffs Office, with one count of aggravated rape, in violation of La. R.S. |a14:42, and one count of aggravated kidnapping, in violation of La. R.S. 14:44. Defendant was arraigned on September 30, 2011 and pled not guilty.
The case was tried before a 12-person jury on October 25, 26, and 27, 2011, after which the jury found defendant guilty of the respective responsive verdicts of forcible rape and second degree kidnapping. On March 8, 2012, the trial judge denied defendant’s motion for a new trial. On that same date, after defendant waived sentencing delays, the trial judge sentenced defendant on each count, forcible rape and second degree kidnapping, to ten years imprisonment with the Department of Corrections, two years of which were ordered to be served without the benefit of probation, parole, or suspension of sentence. The trial judge ordered defendant’s ten-year sentences to run concurrently. On March 22, 2012, defendant filed a motion for an appeal, which was granted on March 27, 2012.

FACTS

The record shows that defendant was an officer with the Jefferson Parish Sheriffs Office, who, while on patrol on November 9, 2009 between approximately 2:00 a.m. and 3:00 a.m., stopped the victim, I.W.,[1] for a traffic infraction while she was driving on Manhattan Boulevard in Harvey, Louisiana. I.W. testified that on that date, she was driving her sister’s car on Manhattan Boulevard with her boyfriend, Glen Allen, seated in the passenger seat, and with her one year old child in the backseat.[2] She was driving carefully because she knew that she had two outstanding attachments for her arrest: one for not having a driver’s license, and another for not having a car seat for her child. She testified that she was driving the speed limit when a police car, which she had previously ^observed parked next to a nearby convenience store, pulled up next to her car while she was stopped at a red light. When she started driving forward from the light, the police car abruptly “jumped over” into her lane behind her. The officer driving the police car, later identified as defendant, activated his overhead lights. I.W. immediately brought her car to a stop. She advised defendant of her name and that of her sister, in whose name the car was registered. Defendant then ordered her out of the car, handcuffed her, and placed her in the backseat of his police car. Defendant eventually allowed Mr. Allen to leave with her child against her wishes.
I.W. testified that defendant returned to his vehicle, and again asked her for her name, at which time he advised her that she had “two tickets for traffic.” However, she said that defendant never told her why he was handcuffing or arresting her. Defendant kept I.W. handcuffed and drove down Manhattan Boulevard, ultimately stopping farther down Manhattan Boulevard at a beauty supply store near a Wal-Mart store.[3] Defendant exited his vehicle, *1133 walked around to the passenger side of the backseat, opened the door, and told I.W. to “scoot over and open your legs,” which she did. Defendant then shined his flashlight on and viewed her open legs, and then closed the door.[4] Defendant then got back into the vehicle and continued to drive down Manhattan Boulevard. Defendant again told I.W. she was going to jail, and stated that he was “tired of all this crying.” Defendant then drove by a Popeye’s Restaurant and then went a “back way” towards the rear of a building that was unfamiliar to her. Once in a secluded parking lot, defendant removed I.W. from the vehicle and walked her around the 1 ¿premises while inspecting the area with his flashlight. He then led her back to his vehicle, ordered her to sit down in the backseat, and removed her handcuffs. I.W. testified that her body was in the vehicle, but her legs were outside with both of her feet on the ground. Defendant then stood in front of I.W., unzipped his pants, and ordered her to perform oral sex on him.
I.W. testified that she said “no, no” to defendant, but she eventually submitted because she felt like she had no other choice. Defendant was wearing a black uniform, and she saw that he had a gun, a taser, and handcuffs. I.W. testified that defendant ejaculated in her mouth and she immediately “threw up” outside of the car. She was crying and defendant threw sanitary wipes at her, stating “clean yourself up.” I.W. used the wipes to clean her shirt and mouth and then discarded them on the ground in the vomit.
I.W. testified that she did not offer defendant oral sex in exchange for him not taking her to jail, which is what defendant claimed in his defense. Rather, it was defendant that told her that if she did not perform oral sex on him, she would go to jail. I.W. stated that she felt she had no choice but to comply with defendant’s demands because “he had his gun, his knife (sic), everything and all I kept thinking about is my two children.” On cross-examination, I.W. admitted that defendant never threatened her with physical violence.
Defendant then got back in the vehicle and drove towards I.W.’s house. Defendant dropped her off about a block from her house and told her that if she told anyone, “[njobody going to believe you.” She said she was not going to tell anyone because she was embarrassed. She then went inside and sat on her bed crying. When her sister came into her room to find out what was wrong, she told her about the incident. Her sister told her that she needed to call the police to report the incident. I.W. explained that she was scared because defendant knew |fiwhere she lived. However, less than an hour later, the crime was reported by family members and I.W. went to the police station to give a statement.
I.W. admitted on direct examination to a history of criminal activity, primarily theft and shoplifting, which she stated were committed in order to provide for her children. She denied ever offering sexual favors to any officer in exchange for remaining out of jail. She also acknowledged that in connection with this incident, she filed a civil suit against the Sheriffs Office, a result of which she received a monetary settlement.
*1134 I.W.’s ex-boyfriend, Mr. Alien, corroborated her testimony regarding the stop of their vehicle by defendant. He testified that he was surprised that defendant did not arrest him because he also had outstanding attachments (a fact noted by defendant in his own testimony). He left the scene as instructed by defendant, taking I.W.’s child to his house. Later that night, he received a phone call from I.W., who was “panicking.” He immediately went to her house, and when he arrived, I.W.’s sister, her cousin, and a “couple of detectives” were there. He then went to the police station to provide a statement.
Lt. Don English of the Jefferson Parish Sheriffs Department testified that on November 4, 2009, he investigated the subject incident. He was notified of the incident, which was reported to have occurred at the Dominion Power Ministries on Lapalco Boulevard, at approximately 4:56 a.m. When he arrived at the scene, he identified what appeared to be vomit in the parking lot with two white disposable cloths sitting on top of the vomit, which he believed corroborated the information provided by I.W. Also contained within the vomit was what appeared 17to him to be semen.[5] Lt. English instructed the Crime Scene technician to collect samples and photograph the scene.
Lt. Mike Kinler, also of the Jefferson Parish Sheriffs Office, testified regarding department protocol to be observed when a person has been arrested. He testified that officers must notify headquarters while en route to the jail, and if an officer is transporting a prisoner of the opposite sex, the officer is required to call in his starting mileage, which is then compared to his ending mileage when the prisoner arrives at the jail. Lt. Kinler testified that there would never be a time when an officer would arrest someone and not notify headquarters. He stated that officers are required to follow these reporting procedures to protect themselves from potential false allegations.[6] He stated that defendant was aware of these police department procedures.
Lt. Kinler also testified regarding defendant’s “trip sheet,” which tracks the officer’s field activity and is returned to the ranking officer at the end of every shift. Lt. Kinler reviewed defendant’s trip sheet from the night of the incident and testified that the log indicated that defendant conducted a traffic stop at 2:55 a.m. on Manhattan Boulevard, in Harvey, and that a traffic citation was not issued. Defendant’s trip sheet reported the ending time of the stop as 8:16 a.m., approximately twenty-one minutes later.[7] The trip sheet also reflected that “necessary action was taken,” which meant to Lt. Kinler that the person who was ^stopped was likely given *1135 a verbal warning and released. The trip sheet did not indicate that any arrests were made.
Lt. Kinler also testified that when he was advised of the complaint regarding a rape performed during a traffic stop, he went to I.W.’s residence. While en route, he observed defendant parked in his patrol unit near the entrance to I.W.’s neighborhood. He asked defendant why he “was back there parked by himself,” to which defendant replied that he was patrolling. Lt. Kinler told defendant to patrol elsewhere, and then went to I.W.’s residence to take her statement. After speaking with I.W., Lt. Kinler stated that he was able to identify where the traffic stop had occurred, and from the logs maintained at headquarters, determined that it was defendant who had conducted the stop. Defendant was subsequently detained and advised that the “bureau” wanted to speak with him, to which defendant “nonchalantly” replied: “Yeah, I know what’s going on.”
Captain Grey Thurman of the Jefferson Parish Sheriffs Office testified that as Commander of the Personal Violence Unit, he was assigned to investigate the instant officer-related complaint. As part of his investigation, Captain Thurman spoke with Lieutenants Kinler and English, who had been involved in the initial stages of the investigation, and also conducted interviews with I.W. and defendant. Defendant was read his Miranda[8] rights, which he subsequently waived, and provided three voluntary statements.[9] Captain Thurman conducted multiple interviews with defendant because he did not believe that defendant’s explanations made “a lot of sense with respect to police procedure.” Specifically, Captain Thurman was confused about defendant’s decision to “take the female over the male, the handcuffing, the un-handcuffing, was she under arrest, was she not under |9arrest.”[10] Additionally, based on the responses provided by defendant in his various statements, Captain Thurman did not believe that I.W. consented to perform oral sex on defendant and in fact did so under duress. After the interviews were completed, defendant was placed under arrest for aggravated rape. Captain Thurman then obtained and executed a search warrant on the patrol car defendant was driving at the time of the incident.
The State rested and the defense called Officer Jeffrey Easterby of the Jefferson Parish Sheriffs Office to the stand. He testified that on November 17, 2009, he was called to investigate a theft at the Winn-Dixie on Lapalco Boulevard in Jefferson Parish. While at the scene, Officer Easterby arrested I.W. for shoplifting. Upon arresting I.W., she stated that the “only reason she was being arrested was in retaliation for her filing a complaint against a fellow officer.” On cross-examination, Officer Easterby testified that at no time did I.W. offer to perform a sexual favor in exchange for not being arrested and taken to jail. Officer Easterby placed I.W. in the backseat of his patrol unit, called headquarters to advise that he was en route to the jail, and provided his starting mileage. When he arrived at the jail, he again called headquarters and provided his ending mileage and advised that I.W. *1136 had arrived at the jail, per standard police procedure.
Officer Chad Gaüthreaux of the Jefferson Parish Sheriffs Office testified that on February 2, 2011, he responded to a reported theft at the Wal-Mart store located on Lapalco Boulevard. Officer Gau-threaux testified in connection with this incident, he arrested I.W. for theft, simple battery, criminal trespass, and resisting arrest.
110Defendant testified in his own defense. He stated that prior to the instant offense, he had never been charged with or convicted of a crime.[11] On November 4, 2009, he stopped I.W. for speeding and discovered that the owner of the vehicle had an outstanding attachment.[12] When I.W. advised him that she did not have a driver’s license, he asked her to step out of the vehicle, whereupon she began crying, which extreme reaction raised a red flag in his mind, prompting him to place her in handcuffs. Defendant then said he brought I.W. to his patrol car to have her identify the photograph that appeared on his computer when he ran the license plate. Defendant stated that he then ran I.W.’s name on his computer and discovered that she had outstanding attachments.
Defendant then went back to I.W.’s vehicle and asked the passenger, Mr. Allen, to step out of the vehicle and provide him with his identification.[13] He also placed Mr. Allen in handcuffs for officer safety and placed I.W. in the backseat of his police car. After discovering that Mr. Allen also had outstanding attachments, he asked I.W. if there was anyone she could call to take her child home. I.W. told defendant that there was no one she could call. Defendant testified that I.W. agreed to allow Mr. Allen to take the child home.
At this point, defendant testified that I.W. stated: “I don’t want to go to jail, I don’t want to go to jail, ... I’ll do whatever.” Defendant asked I.W. what she meant by that statement, to which she repeated: “I’ll do whatever. I don’t want to go to jail. I’ll do whatever.” By the tone of her voice, defendant testified that he believed her statement to mean: “I’ll offer you whatever she had available at that particular time [so] as to not allow her to be transported to the [Jefferson Parish | n Correctional Center].” Defendant testified that at no point did he tell I.W. that she was going to go to jail if she did not perform oral sex on him.
At this point, defendant testified that he allowed Mr. Allen to leave with I.W.’s child, because “we basically got an understanding, that, okay, I’ll do whatever.” Defendant testified that he then took I.W. in the direction of the fire station while they went back and forth as to what I.W. was offering to do for him. Defendant further testified that he never threatened to take I.W. to jail, but rather told her that he did not know if she was going to jail or not. Defendant testified that I.W. propositioned him, and stated her willingness to perform oral sex on him which she later voluntarily performed.[14] Defendant also *1137 testified that he never threatened or forced I.W. into performing oral sex on him. He farther denied that he ejaculated in I.W.’s mouth. He admitted that despite being consensual, his actions were inappropriate and “bad judgment” for an on-duty police officer.
On cross-examination, defendant testified that it was not until they arrived at the last location, the church, that I.W. specified for the first time that she would perform oral sex on him. Before that time, the only thing I.W. had said was “I’ll do anything.” Defendant testified that in his opinion, I.W. made up this “elaborate story” for money.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

In his first and second assignments of error, defendant argues that his sentences are excessive. Specifically, he first argues that his background does not place him in the worst class of offenders based on the fact that he has no prior 112criminal history and had been employed by the police department for a number of years with no “history of any problems.” Secondly, defendant contends that although the trial judge ordered a presentence investigation (“PSI”) report, when sentencing defendant, the trial judge failed to "offer reasons for the sentences imposed, in violation of La.C.Cr.P. art. 894.1.
In response, the State argues that defendant did not file a motion to reconsider sentence pursuant to La.C.Cr.P. art. 881.1,[15] limiting this Court’s review of his sentences for constitutional excessiveness only. The State further submits that the trial judge sentenced defendant to ten years imprisonment, rather than the possible eighty-year sentence recommended by the PSI report. The State asserts that the PSI report revealed that I.W. has suffered extensive emotional and mental anguish as a result of the instant crimes of violence committed by defendant, a law enforcement officer acting in his official capacity.[16] Accordingly, the State maintains that defendant’s low range sentences are not excessive.
The record reflects that defendant did not file a motion to reconsider sentence pursuant to La.C.Cr.P. art. 881.1, nor did he orally object to his sentences at the time they were imposed. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only. State v. Warmack, 07-311 (La.App. 5 Cir. 11/27/07), 973 So.2d *1138 104, 108. Additionally, defendant did not raise the issue of the trial judge’s failure to comply with La.C.Cr.P. art. 894.1 at the trial court level, thus precluding defendant from raising this issue on | ¶ (¡direct appeal.[17] Accordingly, the only issue to be considered herein is whether defendant’s sentences are unconstitutionally excessive.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered unconstitutionally excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the' same court and other courts. Id., 975 So.2d at 656. Generally, the maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. Id., 975 So.2d at 656.
114Pefendant was convicted of forcible rape and second degree kidnapping. The crime of forcible rape carries a sentence of imprisonment at hard labor for not less than five nor more than forty years, at least two years of which must be served without the benefit of probation, parole, or suspension of sentence. La. R.S. 14:42.1(B). The crime of second degree kidnapping carries the same sentence as forcible rape. La. R.S. 14:44.1. Thus, defendant’s total sentencing exposure was eighty years imprisonment, without the benefit of probation, parole, or suspension of sentence for at least two years.
Defendant was sentenced on March 8, 2012. Prior to sentencing, the defense argued that the facts and circumstances of the case, coupled with defendant’s lack of criminal history, required the imposition of the mandatory minimum sentences. After listening to the argument of counsel and reviewing the PSI report, as well as the sentencing guidelines set forth in La. C.Cr.P. art. 894.1, the trial judge sentenced defendant to ten years imprisonment on each count, to be served concurrently, without the benefit of probation, parole, or suspension of sentence for the first two years.
Defendant’s ten-year concurrent sentences for forcible rape and second degree kidnapping are on the low end of the possible sentencing exposure for these offenses. This Court could find no comparable cases where similar sentences were imposed on similarly situated defendants with facts analogous to the instant matter. However, based on the jurisprudence that reflects the imposition of harsher sentences *1139 for first-time offenders who commit forcible rape and second degree kidnapping, we find that defendant’s sentences are on the low end of the jurisprudentially accepted range.
In State v. Greer, 553 So.2d 892 (La.App. 4 Cir.1989), the Fourth Circuit upheld a forty-year sentence for a first-time offender convicted of forcible rape. | iaThe defendant broke into the victim’s home and used physical force to rape her. The victim sustained bruises to her face and a cut lip. In State v. Smith, 430 So.2d 31, 46-47 (La.1983), the Louisiana Supreme Court did not find the defendant’s thirty-year sentence for forcible rape excessive. The defendant had a steady work history and no prior convictions, but had two pending sex offense charges. The defendant fraudulently obtained entry into the victim’s home and raped her. The Supreme Court noted the defendant’s use of force bruised the victim’s nose.
Also, in State v. Meche, 95-797 (La.App. 3 Cir. 12/6/95), 664 So.2d 828, 831, writ denied, 96-0493 (La.5/10/96), 672 So.2d 920, the Third Circuit held that sentences of twenty-five years imprisonment at hard labor on a forcible rape conviction and twenty-five years imprisonment at hard labor on a second degree kidnapping conviction, with the sentences to run concurrently, and with the first five years of each sentence to be served without the benefit of probation, parole, or suspension of sentence, were not excessive. The appellate court found that although the defendant used a gun to commit the crimes, the sentences imposed were in the middle range provided by law, and even though the defendant was a first-time felony offender and the sentences were three times those recommended by the guidelines, the sentences were not excessive.
As for the sentences imposed for second degree kidnapping convictions . in other cases, in State v. Mathieu, 06-946 (La.App. 5 Cir. 5/29/07), 960 So.2d 296, 308-10, writ denied, 07-1424 (La.2/1/08), 976 So.2d 714, this Court upheld a first-time offender’s thirty-year sentence for second degree kidnapping despite his stable work history and his status as a father of four. The defendant approached the victim, who was his ex-wife, as she was leaving work and pushed her into her car while armed with a gun. He then drove her to Mississippi and made several 11fithreats to kill himself. After three or four hours, he drove her back to Gretna, where she escaped. The victim suffered no physical harm.
Also, in State v. Washington, 95-771 (La.App. 5 Cir. 2/14/96), 670 So.2d 1255, 1261-62, writ denied, 98-537 (La.9/25/98), 726 So.2d 7, the defendant’s maximum forty-year sentence for second degree kidnapping was upheld. The defendant and a companion pointed a gun at the victim and ordered him into the victim’s own car. The defendant then drove the victim and a passenger away from the scene to the victim’s girlfriend’s apartment where the defendant and his companion committed aggravated burglary.
In State v. Hawkins, 99-217 (La.App. 5 Cir. 7/2/99), 740 So.2d 768, 771, the defendant, a first-time offender, appealed only the excessiveness of his thirty-year sentence for a second degree kidnapping conviction. Although the defendant was a first-time offender, this Court noted that the defendant had a criminal background. This Court found that the defendant’s thirty-year sentence was neither an abuse of discretion nor unconstitutionally excessive, even when combined with his mandatory sentence of life imprisonment for aggravated rape.
In State v. Washington, 95-771 (La.App. 5 Cir. 2/14/96), 670 So.2d 1255, writ denied, 98-0537 (La.9/25/98), 726 So.2d 7, the defendant was convicted of aggravated burglary, second degree kidnapping, and carjacking. This Court upheld as not ex *1140 cessive a forty-year sentence imposed on the first-time offender for the second degree kidnapping conviction.[18]
Based on the foregoing, we find that defendant’s ten-year concurrent sentences do not shock the sense of justice. Even though defendant had no |17criminal record, the nature of the crime shows that his sentences are not excessive after considering the circumstances of this case. This Court notes that defendant committed these crimes while on duty as a law enforcement officer, and used the authority of his position to select the victim and commit the crimes against her.
At trial, the trial judge listened to the victim’s testimony of the traumatic events that occurred after being stopped by defendant (a Jefferson Parish police officer acting in his official capacity). The victim testified that while defendant was standing in front of her, she could see his gun, a taser, and handcuffs on his waist belt. The victim testified that defendant forced her to perform oral sex on him, specifically testifying in detail as to the events of that morning.
In addition to the testimony presented at trial, the trial judge also ordered a PSI report, which he reviewed prior to sentencing defendant. The PSI report indicates that defendant was a thirty-nine year old first-time felony offender, who was convicted of forcible rape and second degree kidnapping, two crimes defined by La. R.S. 14:2(B) as crimes of violence. Defendant admitted that he did in fact receive oral sex from the victim while on duty as a Jefferson Parish Sheriffs Deputy, but maintained that the act was initiated by the victim because she did not want to go to jail. Due to the severe nature of the offense, which “resulted in the extensive emotional and mental anguish of the victim, as well as committing these offenses while he was sworn to protect and serve the public as a law enforcement officer,” the PSI report recommended that defendant be sentenced to the maximum of forty years for each conviction, to run consecutively.
Despite the eighty-year sentence recommendation, the trial judge imposed two ten-year concurrent sentences on defendant, with only the first two years, rather than the entirety of the sentence, to be served without the benefit of parole, 11sprobation, or suspension of sentence. The trial judge imposed sentences on the low range of defendant’s possible sentencing exposure.
The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, supra. Considering the nature of the offenses, including the impact on the victim, and the fact that defendant was acting in his official capacity as a law enforcement officer at the time these crimes of violence were committed, we find that defendant’s low-range ten-year sentence for forcible rape and his low-range ten-year sentence for second degree kidnapping are not unconstitutionally excessive. These assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER THREE

In his final assignment of error, defendant argues that his counsel was ineffec *1141 tive for failing to file a motion to reconsider sentence pursuant to La.C.Cr.P. art. 881.1. He contends that the failure of his counsel to file this motion now precludes him from challenging the excessiveness of his sentences and the trial judge’s failure to articulate a basis for the sentence imposed under La.C.Cr.P. art. 894.1.
In response, the State argues that an ineffective assistance of counsel claim is more properly addressed through an application for post-conviction relief. Nevertheless, the State contends that defendant cannot prevail on the merits of his claim because there has been no showing that the sentences would have been any different even if his counsel had filed a motion to reconsider sentence.
Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. McDonald, 04-550 (La.App. 5 Cir. 11/16/04), 889 So.2d 1039, 1191042, writ denied, 04-3088 (La.4/1/05), 897 So.2d 599. To prove ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the Strickland test, the defendant must show: (1) that counsel’s performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. State v. Dabney, 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, 63, citing Strickland v. Washington, supra. An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Serio, 94-131 (La.App. 5 Cir. 6/30/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388. To prove prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 694,104 S.Ct. at 2068.
Generally, a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than on direct appeal, so as to afford the parties an adequate record for review. State v. Robertson, 08-297 (La.App. 5 Cir. 10/28/08), 995 So.2d 650, 659, writ denied, 08-2962 (La.10/9/09), 18 So.3d 1279. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Grimes, 09-2 (La.App. 5 Cir. 5/26/09), 16 So.3d 418, 426, writ denied, 09-1517 (La.3/12/10), 28 So.3d 1023; State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. Given the nature of this particular claim, wej^find that the appellate record contains sufficient evidence for this Court to address the merits of the ineffective assistance of counsel claim made by defendant herein.
Generally, the defendant’s failure to make a specific objection at the time of sentencing or to file a written motion to reconsider sentence precludes review of a sentence on appeal. State v. Fisher, 03-326 (La.App. 5 Cir. 7/29/03), 852 So.2d 1075, 1084, writ denied, 03-2545 (La.5/14/04), 872 So.2d 510. However, this Court routinely reviews sentences for constitutional excessiveness even in the absence of the defendant’s timely objection or the filing of a motion to reconsider sentence. Fisher, 03-326, 852 So.2d at 1084. Therefore, trial counsel’s failure, in this case, to file a motion to reconsider sentence did not prejudice defendant by denying him such review. See State v. *1142 Lewis, 09-783 (La.App. 5 Cir. 5/28/10), 43 So.3d 973, 989; State v. Smith, 09-1043 (La.App. 5 Cir. 6/29/10), 43 So.3d 261, 265.
Further, the mere failure to file a motion to reconsider sentence does not in and of itself constitute ineffective assistance of counsel. State v. Fairley, 02-168 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 816, writs denied, 03-1427 (La.4/23/04), 870 So.2d 290 and 08-2581 (La.1/30/09), 999 So.2d 755. A defendant must also “show a reasonable probability that, but for counsel’s error, his sentence would have been different.” Id.
In a case similar to the instant one, State v. Armstead, 07-741 (La.App. 5 Cir. 2/6/08), 980 So.2d 20, 26, writ denied, 08-0601 (La.10/3/08), 992 So.2d 1010, the defendant contended .that his sentence was excessive and asserted that the trial judge did not consider any mitigating factors as provided in La.C.Cr.P. art. 894.1. The defendant further contended that his counsel was ineffective because he did not object to the sentence or file a motion to reconsider sentence, depriving the defendant of appellate review of his sentence. Id. This Court found that since it |2iroutinely reviewed sentences for constitutional excessiveness even in the absence of a defendant’s timely objection or the filing of a motion to reconsider sentence, trial counsel’s failure to object to the sentence did not prejudice the defendant by denying him such review. Id.
Additionally, this Court found that, because defense counsel did not file a motion to reconsider sentence, the defendant had lost his right to a review of his argument concerning the trial court’s non-compliance with Article 894.1 on direct appeal. Id. However, this Court found that the defendant still had to show a reasonable probability that his sentence would have been different but for this error, and that the defendant had not met that burden of proof, since there was an adequate factual basis in the record for the sentence imposed. Id., 980 So.2d at 26-28.
In the'instant case, the trial court provided an adequate factual basis in the record for the sentences imposed, as more fully shown and discussed supra. As previously noted, the trial judge presided over the entire trial, heard all of the evidence, and reviewed the PSI report prior to sentencing defendant. Additionally, prior to sentencing, the trial judge further stated that he considered the guidelines set forth in La.C.Cr.P. art. 894.1. The trial judge’s failure to articulate every circumstance listed in La.C.Cr.P. art. 894.1 does not require a remand for resentencing. State v. Sanders, 98-855 (La.App. 5 Cir. 5/19/99), 734 So.2d 1276, 1279, writ denied, 99-1980 (La.1/7/00), 752 So.2d 175.
Further, we note that the trial court, in sentencing defendant, considered the PSI report, yet deviated substantially downward from the sentences recommended therein, thus rendering it speculative, and in all likelihood improbable, that the trial court would have granted a motion to reconsider sentence, if filed, in order to further lower defendant’s sentences. Considering all of the facts and arguments in 122this case, we find that defendant did not meet his burden of proof to show to a reasonable probability that his sentences would have been different if his trial counsel had filed a motion to reconsider sentence. Therefore, defendant did not receive ineffective assistance of counsel at sentencing because he did not prove that the failure of his counsel to file a motion to reconsider sentence resulted in his prejudice. This assignment of error is without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La. *1143 App. 5 Cir.1990). This review indicates that although the commitment reflects that defendant was properly advised of the time period for seeking post-conviction relief as required by La.C.Cr.P. art. 930.8., the transcript does not so indicate. When there is a discrepancy between the commitment and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, by way of this opinion, we hereby advise defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922.[19]
| ^CONCLUSION
For the reasons stated herein, we affirm defendant’s sentences. Further, we find that defendant did not receive ineffective assistance of counsel at sentencing.

AFFIRMED

. The victim’s initials are used under the authority of La. R.S. 46:1844(W)(3).

. I.W. was 22 years old at the time of the subject incident. Mr. Allen is not the child's father. The child was not in a car seat.

.Later, Captain Grey Thurman testified that Wal-Mart provided video footage from the night of the incident, which revealed that a marked police car drove into the parking lot and pulled behind a wall. The wall obstructed any further view. Captain Thurman further testified that defendant's vehicle was *1133 caught on tape around 3:00 a.m., and that the camera footage was consistent with defendant and I.W.'s recollection of the events of that morning.

. The victim testified that she was wearing a t-shirt, a bra, and pink shorts, but no underwear. She had finished her shift at Burger King at 2:00 a.m., returned home, changed clothes, and had taken Mr. Allen to his home to retrieve his work clothes because he had to go to work that day.

. Elaine Schneida of the Jefferson Parish Sheriff’s Office Crime Lab was qualified as an expert in the testing and analysis of DNA. She testified that she took buccal cell samples from I.W. and defendant and compared them with the biological fluid recovered from a pair of defendant’s underwear. Both I.W. and defendant's DNA were present on the underwear. The analysis of the samples also indicated the presence of semen and saliva. I.W.’s "throw-up’’ was also tested, and was consistent with I.W.’s DNA.

. Captain Grey Thurman corroborated the information provided by Lt. Kinler regarding the police department’s procedures for traffic stops, arrests, and transportation of prisoners.

.Detective Steven Villere testified that he was asked to conduct a computer forensic examination of the traffic cameras to determine whether defendant’s patrol car drove through the intersection of Harvey and Manhattan Boulevards that evening. His examination revealed that defendant’s patrol car drove through the intersection at 2:52 a.m. and again at 3:22 a.m. Detective Villere also did a search of I.W.’s license plate and discovered that she drove through the same intersection at 1:56 a.m. and again at 2:52 a.m.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. All three of defendant's statements were played for the jury and entered into evidence.

. Captain Thurman also believed defendant’s statement to be inconsistent because defendant had originally admitted to pulling over in the Wal-Mart parking lot to move I.W. over in the backseat to the passenger side so that he could keep an eye on her, but also told him that I.W. was not handcuffed, meaning that I.W. could have moved over in the backseat on her own.

. However, on cross-examination, defendant "took the Fifth” when asked if he had ever received sexual favors from people he had detained on traffic stops.

.On cross-examination, defendant testified that he did not issue a speeding ticket to I.W., which he described as a "bad decision on my part.”

. Mr. Allen did not have a driver's license either, but provided defendant with a Louisiana identification card.

. On cross-examination, defendant testified that he initially drove I.W. to the fire station to take her up on her offer, but after realizing that it was "not a good spot,” drove down Manhattan Boulevard to the Wal-Mart, where he stopped a second time to remove a hanger in I.W.'s possession and to move I.W. over to *1137 the passenger side of the backseat. Defendant also admitted that while in the Wal-Mart parking lot, I.W. again stated “I don't want to go to jail, I’ll do whatever,” despite him having previously told I.W. that she was not going to jail. Defendant testified that he did not know why I.W. was making those comments at that point in time since he had already advised her that he was not taking her to jail.

. La.C.Cr.P. art. 881.1(E) states: ”[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence is based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.”

. The PSI report was included in the record of this case. The report is considered confidential under La.C.Cr.P. art. 877. Article 877(A) states that a PSI report “shall be privileged and shall not be disclosed directly or indirectly to anyone” other than the sentencing court, the victim and other specified persons and entities. Article 877(C) provides that ”[t]he presentence investigation report, edited to protect sources of confidential information, shall.be made a part of the record if the defendant seeks post-conviction relief only on the grounds of an excessive sentence imposed by the court.”

. See State v. Carter, 07-270 (La.App. 5 Cir. 12/27/07), 976 So.2d 196, 202.

. See also State v. Mathieu, supra (this Court upheld a first-time offender’s thirty-year sentence for second degree kidnapping); State v. Sullivan, 41, 236 (La.App. 2 Cir. 8/23/06), 939 So.2d 516, 518 (the defendant received a fifteen-year sentence for second degree kidnapping where he pointed a gun at the victim and fired but missed); and State v. Brown, 41,883 (La.App. 2 Cir. 4/4/07), 956 So.2d 53 (a nineteen year old first-time felony offender’s twenty-year sentence for second degree kidnapping was found not to be excessive where the defendant had used a gun and threatened the lives of three victims).

. It is well settled that if a trial court fails to advise or provides incomplete advice pursuant to La.C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. See State v. Neely, 08-707 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-0248 (La. 10/30/09), 21 So.3d 272.